IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. LADONNA PARIS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>1. RONNI CARROCIA, an individual;<br>2. DAYLAN ROOT, an individual;<br>3. TY BURNS, an individual;<br>4. CITY OF TULSA, a municipal corporation;<br>5. GEORGE THERON BYNUM IV, an individual;<br><br>Defendants. | Case No. 4:22-cv-00235-TCK-JFJ |

**DEFENDANT BYNUM'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant George Theron Bynum IV ("Defendant" or "Bynum") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's claims against him as she has failed to state a claim for which relief can be granted. In support of his Motion, Mayor Bynum would show the Court as follows:

**INTRODUCTION**

Plaintiff Ladonna Paris ("Plaintiff" or "Ms. Paris") has initiated the present lawsuit as a result of her interaction with three Tulsa Police Department Officers on October 25, 2021. She alleges she was having a bipolar manic episode that included paranoia and delusions and she believed officers were going to kill her. She locked herself in the bathroom at ReStore Tulsa and refused to come out for approximately 4 hours. An employee of ReStore Tulsa called 911 and requested police assistance. Officers Carrocia and Root were dispatched to the scene and made efforts to have Ms. Paris voluntarily come out of the bathroom. Ms. Paris alleges that they escalated the situation. Ultimately, Officer Burns arrived and forced entry into the bathroom and assisted in searching and arresting Ms. Paris. Officer Carrocia then

1

booked her into the Tulsa Co. Jail on multiple charges. Ms. Paris is asserting multiple claims against Officers Carrocia, Root, and Burns. She is also alleging the City of Tulsa is in violation of the Americans With Disabilities Act due to the officers not providing reasonable accommodations to Ms. Paris in the course of responding to the 911 call. She further alleges claims of ratification, deliberately indifferent policies, customs, training, and supervision against the City.

Bynum's involvement in this case is limited to the fact that he is and was the Mayor of Tulsa on the date of the incident. Ms. Paris has not alleged any specific facts which would support any claim that Bynum had any prior knowledge of or was directly involved in the investigation or had any interaction with Ms. Paris. She alleges that the Tulsa Police Department ("TPD") has policies in place that prohibit officers from engaging in bias-based policing, that state that, "officers will attempt to reduce perceptions, if any, of bias when detaining a citizen…", that "when consistent with the safety of an officer or others and when reasonable, officers will…be courteous, polite, and professional…" that, "violations of this policy shall result in disciplinary action", and that "an officer shall use de-escalation techniques…consistent with his or her training whenever possible and appropriate before resorting to force and to reduce the need for force." (Doc. 8-1 at 18).

Ms. Paris claims that based on these policies, a formal complaint was filed against the Defendant Officers in November 2021 (*Id*.). TPD issued a statement indicating the overall actions of the officers and the way the call was handled was within the policies of TPD. Ms. Paris alleges that Bynum is the final policymaker for TPD and that he stated he was confident in the investigation conducted by the Tulsa Police Department (Id. at 19).

Ms. Paris specifies that she is suing Bynum as "an individual" for acts or omissions made that she alleges violated her civil rights. (Doc. 8-1 at 8). She then makes claims against him of ratification and supervisory liability, which he would have performed in the course of his official capacity. With respect to Mayor Bynum, the Complaint alleges: (1) "The City of Tulsa through its final policymaker Defendant Bynum, did not discipline the officers, did not implement any new policies, and did not provide any new training. Accordingly, the failure of Defendant City and its final policymaker to act in response to this egregious conduct is sufficient for a jury to infer approval and agreement with the actions described above for which the City of Tulsa is liable" (*Id*. at 19-20); and (2) "Defendant Bynum is liable to Ms. Paris for the Defendant Officers' violations of her civil rights due to his personal involvement and responsibility to adopt, enact, ratify, enforce, and maintain the policies and practices that caused the injuries and damages to Ms. Paris…Defendant Bynum has failed to implement adequate measures to ensure greater accountability within TPD…Defendant Bynum's deliberate refusal to do more to ensure officers who violate people's rights are held accountable was the moving force behind the violations of Ms. Paris' rights…and as such, Defendant Bynum is individually liable to Ms. Paris…;" (*Id*. at 34-35).

In other words, the Complaint does not allege Bynum **personally participated** in violating Ms. Paris' constitutional rights or otherwise caused her injuries. Instead, Plaintiff seeks to hold Bynum personally liable for the acts or omissions of his subordinates under 42 U.S.C. § 1983. As shown below, Plaintiff's claims against Defendant Bynum are not valid. The deficiency in Plaintiff's claims results from two key legal realities: (1) Plaintiff cannot establish Mayor Bynum violated a clearly established constitutional right; and (2)

3

supervisory liability is insufficient for the purposes of a § 1983 claim. It should further be noted that § 1983 is not applicable to Bynum to the extent he is sued in his official capacity.

## ARGUMENT AND AUTHORITIES

A.  **STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.**

The current standard to be followed by a district court when considering a motion to dismiss under Rule 12(b)(6) was summarized by the Tenth Circuit in *Robbins v. State of Oklahoma, ex rel. Dept. of Human Services,* 519 F.3d 1242 (10th Cir. 2008), as "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face." 519 F.3d at 1247 (emphasis in original); *see also Dodds v. Richardson,* 614 F.3d 1185, 1202 (10th Cir. 2010).

As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 536 U.S. 662, 679, (2009) (quoting Fed.R.Civ.P. 8(a) (alterations in original)).

Importantly, a complaint must present factual allegations that "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. While Plaintiff has provided factual allegations, it is clear that, even if true, they fail to establish a constitutional violation and they are inadequate to overcome a motion to dismiss.

B.  **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AGAINST DEFENDANT BYNUM.**

   1.  **Mayor Bynum Did Not Give Prior Approval for the Alleged Acts by the Officers and Plaintiff Has Failed To State a Ratification Claim.**

Any ratification must take place prior to the alleged conduct. "A municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's

4

specific unconstitutional actions, as well as the basis for these actions." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010). *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), ("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.") (emphasis in original).

"Failing to adequately investigate or punish does not count as ratification." *Lynch v. Board of County Commissioners of Muskogee County, Oklahoma*, 786 Fed. Appx. 774, 787 (10th Cir. 2019). "The final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the *moving force, or cause*, of the alleged constitutional violation." *Dempsey v. City of Baldwin*, 143 Fed. Appx. 976, 986 (10th Cir. 2005) (emphasis added) (*citing Paprotnik*, 480 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

The United States District Court for the Eastern District of Oklahoma recently considered a similar ratification claim in the matter of *Osborn v. Meitzen*, 2020 WL 3800547. There, the plaintiff was driving a motorcycle without a working taillight and a Bryan County Sheriff's Deputy began following her. The plaintiff would not stop or pull over and the Deputy radioed for assistance. At an intersection, a Town of Calera Police Officer moved his patrol car to block the roadway. Unable to stop, the plaintiff struck the patrol car and was injured. The plaintiff then brought a claim against the officer for excessive use of force and a claim against the Town of Calera for ratification. In support, the plaintiff alleged that the Chief of

5

Police ratified the officer's unconstitutional actions because he found no wrongdoing by the officer after the incident. The Court found this was insufficient to state a ratification claim and granted the Town of Calera's Motion To Dismiss. *See, e. g., Estate of Valverde v. Dodge*, 2017 WL 1862283, at *10 (D. Colo. May 9, 2017) ("Indeed, because the alleged ratification happened after the shooting, Plaintiff had already suffered the injury by the time it occurred. Therefore, Denver's acceptance and praise of Dodge's conduct did not cause Valverde's injury."). *See also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("[B]asic principals of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation.").

Like the plaintiff in *Osborn*, Ms. Paris claims "[t]he City of Tulsa through its final policymaker Defendant Bynum, did not discipline the officers, did not implement any new policies, and did not provide any new training… *the failure of Defendant City and its final policymaker to act in response to this egregious conduct* is sufficient for a jury to infer approval and agreement with the actions described above for which the City of Tulsa is liable" (Doc. 8-1 at 19-20) (emphasis added). As the alleged ratification is not alleged to have occurred until after the alleged unconstitutional conduct of the officers, it could not have been the moving force or cause of the alleged constitutional violations. Because Plaintiff has failed to allege a causal link between the act of ratification and the alleged unconstitutional conduct, Plaintiff's claim for liability based on ratification should be dismissed.

### 2. Supervisory Liability is Inapplicable in § 1983 Actions and Insufficient for Showing a Constitutional Violation.

It is well established within the Tenth Circuit that a *§ 1983* complaint must allege the specific misconduct of *each* defendant because the linchpin of any *§ 1983* claim is **personal participation**. In *Foote v. Spiegel*, the Tenth Circuit Court stated: "individual liability under

6

[§ 1983] must be based upon ***personal involvement*** in the alleged constitutional violation." 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also Bennet v. Passic* 545 F.2d 1260, 1262–63 (10th Cir. 1976). Indeed, the Tenth Circuit has reiterated that liability under § 1983 will only be had "where there is an 'affirmative link' between the alleged violator's conduct and the alleged violation . . ." *Stedham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Plaintiff's Complaint fails to allege facts that show the requisite personal involvement on the part of Mayor Bynum.

Further, the United States Supreme Court has affirmed the inapplicability of supervisory liability in § 1983 actions and expressed skepticism as to whether supervisory liability can be used to show a constitutional violation. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There, the Supreme Court asked whether the "[plaintiff] plead factual matter that, if taken as true, states a claim that [Ashcroft and Mueller] deprived [the plaintiff] of his clearly established constitutional rights." *Id*. at 666. For his part, Iqbal alleged then FBI Director Mueller and then U.S. Attorney General John Ashcroft "[approved] the policy of holding post–September 11th detainees in highly restrictive conditions of confinement," and that "[Mueller and Ashcroft] each knew of, condoned, and willfully and maliciously agreed to subject [Iqbal] to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" *Id*. at 669. Iqbal further alleged Ashcroft was the "principal architect of the policy," and identified Mueller as "instrumental in [the policy's] adoption, promulgation, and implementation." *Id*.

The Court dismissed Iqbal's allegations, holding "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official

7

defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 677. It further reasoned that, because Iqbal alleged discriminatory purpose in violation of the First and Fifth Amendments, Iqbal would have to allege "sufficient factual matter" that Ashcroft and Mueller "adopted and implemented the detention policies at issue . . . *for the purpose of discriminating* on account of race, religion, or national origin." *Id.* [emphasis added]. "[P]urposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a *decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of'* the actions adverse effects upon an identifiable group." *Id*. From there, the Court concluded Iqbal's complaint was insufficient—"[t]o prevail on [his] theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post-September 11 detainees as 'of high interest' because of their race, religion, or national origin." *Id*. at 682.

Here, Plaintiff has alleged that Bynum should be held liable under a supervisory liability theory. In support, she alleges only that, "Defendant Bynum is liable to Ms. Paris for the Defendant Officers' violations of her civil rights due to his personal involvement and responsibility to adopt, enact, ratify, enforce, and maintain the policies and practices that caused the injuries and damages to Ms. Paris…Defendant Bynum has failed to implement adequate measures to ensure greater accountability within TPD…Defendant Bynum's deliberate refusal to do more to ensure officers who violate people's rights are held accountable was the moving force behind the violations of Ms. Paris' rights…and as such, Defendant Bynum is individually liable to Ms. Paris…;" (*Id*. at 34-35). The allegation of personal involvement is only conclusory as the Complaint fails to allege facts that would show Bynum had any involvement in the alleged constitutional violations or purposely

created unconstitutional policies. To the contrary, the Complaint cites to policies TPD has in place that prohibit officers from engaging in bias-based policing (Doc. 8-1 at 18). Plaintiff does not allege Bynum created unconstitutional policies, ever had any prior communication or interaction with Plaintiff, Officer Carrocia, Officer Root, or Officer Burns, or that he was even at Restore Tulsa at the time of the alleged violative conduct.

The only link Plaintiff alleges between Bynum and the incident is his "responsibility to adopt, enact, ratify, enforce, and maintain the policies and practices that caused the injuries and damages to Ms. Paris." (Doc. 8-1 at 34). Even assuming those allegations to be true, they fall well short of demonstrating Bynum personally participated in the alleged constitutional violation with a "purpose" to harm Plaintiff. As discussed above, it is not enough for Plaintiff to allege a constitutional violation. Instead, per Tenth Circuit jurisprudence, Plaintiff must allege Mayor Bynum was **personally involved** in the alleged constitutional violation. The complaint falls short of this requirement, and therefore fails to state a plausible claim against Defendant Bynum.

Moreover, Plaintiff's Complaint falls short under the principles in *Ashcroft*. That case provides an analogous factual and legal situation as found here. Like in *Ashcroft*, Plaintiff claims the policymaking decisions of Bynum resulted in a violation of her constitutional rights. (Doc. 8-1, 34-35). The only legal difference is that Plaintiff asserts a Fourteenth Amendment "shocks the conscience" violation of Due Process rather than violations of the First and Fifth Amendments as the plaintiff in *Ashcroft* did. Both claims require an allegation of **purposeful intent**. *Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (only intentional violations of the constitution qualify for shocks the conscience standard). The pleadings in *Ashcroft* were found insufficient because they did not allege "facts plausibly showing that

9

petitioners purposefully adopted a policy of classifying post-September 11 detainees as 'of high interest' because of their race, religion, or national origin." *Ashcroft*, 556 U.S. at 682. Therefore, Plaintiff's Complaint fails to state a plausible claim unless it is alleged Bynum enacted policies and practices ***for the purpose*** of placing the public at risk of substantial injury. Plaintiff does not make such an allegation. Nonetheless, per *Ashcroft*, that is exactly the kind of allegation Plaintiff must make to hold Bynum liable for a constitutional violation which was allegedly committed by his subordinates. Plaintiff fails to state a plausible claim under *Ashcroft* and Tenth Circuit § 1983 jurisprudence and the Complaint must be dismissed under FRCP 12(b)(6).

**2. The Claims against Mayor Bynum are Redundant of the Official Capacity claims against Carrocia, Root, Burns, and the City of Tulsa and should be dismissed.**

The substance of Plaintiff's Complaint makes clear that the claims against Mayor Bynum are asserted against him in his "official capacity". While the caption of the Complaint identifies Mayor Bynum as "an individual", the Tenth Circuit has held that "[i]n discerning whether a lawsuit is against a defendant personally or in his official capacity, the caption may be informative but clearly is not dispositive." *Retired Pub. Employees of NM, Inc. v. Propst*, 850 Fed. Appx. 645, 647 (10th Cir. 2021) quoting *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993). In *Retired Pub. Employees of NM, Inc.*, the Tenth Circuit held that the district court did not err in looking past the caption of the Complaint and to the substance of the allegations to determine whether the claims were brought against the Defendants in an official or individual capacity. 850 Fed. Appx. At 647. The Court found that when looking to the substance of the allegations, the claims "unambiguously concern actions they took (or failed to take) in their official capacities." *Id*. Such is the case in the claims asserted against Mayor

Bynum. As set forth above, the allegations relate to his involvement as the City of Tulsa's final policy maker, which is an official capacity claim.

The claims against Bynum are redundant of Plaintiff's claims against the City of Tulsa and should be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, (1978) ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'")). "In cases where a local governmental entity is sued along with an official of that entity in his or her official capacity, the official capacity claims are subsumed within the claims against the government entity and, therefore, the official capacity claims against individual defendants are properly dismissed as redundant." *London v. Hill*, No. 11-CV-028-GKF-FHM, 2012 WL 529934, at *4 (N.D. Okla. Feb. 14, 2012) (citing *Lewis v. Sacramento County*, 98 F.3d 434, 446 (9th Cir. 1996)).

Here, Plaintiff has also sued the City of Tulsa along with Officers Carrocia, Root, and Burns in their official capacities and has alleged they "at all relevant times…were officers employed by the Tulsa Police Department ("TPD") and acting under color of state law" (Doc. 8-1, Paragraph 3). There are no allegations that Bynum had any direct involvement in the subject investigation or interaction with Plaintiff. Therefore, any official capacity claims against Mayor Bynum should be dismissed.

    **3.**    **Mayor Bynum is entitled to qualified immunity.**

Even if Plaintiff could overcome the above issues with her Complaint, the doctrine of qualified immunity serves to preclude her claims against Bynum. "Under the doctrine of qualified immunity, government officials performing discretionary functions, generally are

11

shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights . . ." *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005); *see also Frank v. Relin*, 1 F.3d 1217, 1327, (2nd Cir. 1993) (explaining qualified immunity applies to claims for monetary relief brought against officials in their individual capacities). Qualified immunity serves to protect governmental officers from personal liability when the officer "reasonably believes that his or her conduct complies with the law." *Pearson et al. v. Callahan*, 129 S. Ct. 808 (2009). Because qualified immunity is "an immunity from suit rather than a mere defense to liability…it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis deleted). The United States Supreme Court has determined that "resolving immunity questions at the earliest possible stage in litigation" is important. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (*per curiam).*

In responding to an assertion of a qualified immunity defense, the plaintiff must satisfy "a heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citations and internal quotations omitted). First, the plaintiff must establish that the particular defendant violated a specific constitutional right. *Id.* (citations and internal quotations omitted). Second, the plaintiff must prove that the particular right was clearly established when the conduct occurred. *Id.* (citations omitted); s*ee also Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996); *Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994). The U.S. Supreme Court grants the district courts discretion when considering these factors. *Pearson v. Callahan,* 555 U.S. 223, 225 (2009). If the plaintiff fails to satisfy either part of the two-part inquiry, the court should grant the defendant qualified immunity. *Id*. at 36.

12

To prove that a particular right was clearly established, the plaintiff must offer a "Supreme Court or Tenth Circuit opinion on point" (although identical facts are not required) or must establish "that his or her proposition is supported by the weight of authority from other courts." *Id*. The standard is not how well established any given right is, but rather, how clear it is that the right is being violated. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The plaintiff must establish that "'the contours of the right are sufficiently clear' that every 'reasonable official would understand that what he is doing violates that right.'" *Ashcroft v. Al-Kidd, Ashcroft v. Al-Kidd,* 563 U.S. 731, 740-41 (2011) (*quoting Anderson, supra*).

If the plaintiff satisfies both parts, the defendant may still prevail on the defense of qualified immunity since the objectively reasonable standard requires district courts to evaluate the facts from the perspective of an official who is "prudent, cautious and trained." *U.S. v. Santana Garcia*, 264 F.3d 1188, 1192 (10th Cir. 2001). "The subjective belief of the [government official] is not dispositive," *Id.*, and "[e]vidence concerning the defendant's subjective intent is simply irrelevant" to the objectively reasonable standard. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Ashcroft,* 563 U.S. at 743-44 (quoting *Malley*).

Plaintiff asserts here that Bynum ratified the acts of the officers based on his response after the incident. (Doc. 8-1, 18-20, ¶92). As shown above, the alleged ratification is not alleged to have occurred until after the alleged unconstitutional conduct of the officers and it could not have been the moving force or cause of the alleged constitutional violations. Plaintiff, therefore, cannot meet her burden as to her ratification claim.

Plaintiff further alleges that Bynum, by exercising his policy-making authority, violated her right to substantive due process as guaranteed by the Fourteenth Amendment of the Constitution. (Doc. 8-1, 34-35). To show a violation of substantive due process, a plaintiff must demonstrate that the defendant abused their executive authority to such a "brutal and offensive" extent that it "shocks the conscience" and "violates the 'decencies of civilized conduct.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (only intentional violations of the constitution qualify for shocks the conscience standard).

Generally, determining what does and does not "shock the conscience" varies from one factual context to another. *See Id*. at 850. However, "[h]istorically, this guarantee of due process has been applied to ***deliberate*** decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327 at 331 (1986) [emphasis original]. With that in mind, the Supreme Court has presented a rare bright-line rule: "***negligently inflicted harm is categorically beneath the constitutional due process threshold*** . . ." *Lewis*, 523 U.S. at 849. In other words, a violation of substantive due process cannot be inflicted through a negligent act or omission.

In addressing qualified immunity in *Ashcroft*, the Supreme Court held: "the sufficiency of [Iqbal's] pleadings [are] both inextricably intertwined with, and directly implicated by the qualified immunity defense," *Ashcroft*, 556 U.S. at 677, because "[i]n the context of determine whether there is a violation of [a] clearly established right . . . ***purpose*** rather than knowledge is required . . ." *Id*. [emphasis added]. Therefore, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution." *Id*. at 676. Mayor Bynum is entitled to qualified immunity because he did not **personally participate** in **causing** any constitutional violation with the **requisite state of**

14

**mind (*i.e.*, purposeful intent)** necessary for such claims. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

Plaintiff has failed to make such an allegation in the immediate case. Not only is there no more than a conclusory allegation of Bynum being personally involved with the circumstances underlying Plaintiff's claimed injuries, but there is also no allegation that Bynum made a policy-making decision with the purpose of violating Plaintiff's substantive due process rights. Plaintiff is thus unable to overcome qualified immunity and fails to state a plausible claim for violation of substantive due process.

### 4. Plaintiff fails to show entitlement to Punitive Damages.

While available in § 1983 actions, "punitive damages are to be awarded **only** when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)) (emphasis added). The facts alleged by Plaintiff, even if true, fail to show malicious conduct, evil motive, or reckless indifference. As previously shown above, Plaintiff has not pointed to any facts or specific allegations which would show Bynum acted with evil motive or intent. The allegations in the Complaint are insufficient to demonstrate that he knowingly and maliciously violated the law. The claims fail to give rise to an entitlement to punitive damages and this claim should also be dismissed.

### CONCLUSION

Based upon the facts, arguments and authorities set forth above, Defendant Bynum respectfully requests this Court to enter an Order dismissing all of Plaintiff's claims against him in their entirety and for such further relief this Court deems just and proper.

        Respectfully Submitted,

        CITY OF TULSA,
        a municipal corporation

        JACK C. BLAIR,
        City Attorney

BY:   /s/R. Lawson Vaughn
        R. Lawson Vaughn, OBA # 21557
        Senior Assistant City Attorney
        Hayes T. Martin, OBA # 32059
        Assistant City Attorney
        City Hall, One Technology Center
        175 East Second Street, Suite 685
        Tulsa, Oklahoma  74103
        (918) 596-7717 Telephone
        (918) 596-9700  Facsimile
        *Attorneys for Defendant Mayor Bynum*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the counsel of record in this case.

        /s/ R. Lawson Vaughn
        R. Lawson Vaughn