UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| 1. LADONNA PARIS, an individual<br><br>Plaintiff,<br><br>v.<br><br>1. RONNI CARROCIA, an individual; et al.<br><br>Defendants. | Case No.: 4:22-CV-235-TCK-JFJ |

**PLAINTIFF'S RESPONSE TO DEFENDANT BYNUM'S
MOTION TO DISMISS**

Pursuant to LCvR. 7.1(d), Plaintiff respectfully submits this response to the Motion to Dismiss by Defendant George Theron Bynum IV (Bynum). The motion lacks merit and the Plaintiff respectfully requests the Court deny the same.

I.

INTRODUCTION

Bynum is mayor and final policymaker for the City of Tulsa with respect to the operations of the Tulsa Police Department ("TPD") as alleged in the Complaint and according to Title 29, Chapter 1, Section 101 of the City of Tulsa Municipal Code. (Doc. 8.1, pp. 8-45, ¶¶ 5, 91). Plaintiff alleged Bynum violated § 1983 through post-incident ratification of TPD's actions against Plaintiff. (*Id.* at p. 18).

Specifically, Plaintiff alleged TPD violated written policies 136(B) and 101(A) during the encounter with Plaintiff. *Id.* And the Complaint alleged Bynum failed to impose discipline, that he failed to implement new policies, and failed to provide new

1

training based upon TPD's encounter with Plaintiff. (*Id.* at ¶ 92). Bynum's response, including his failure to address TPD's conduct and violations of written policy, is sufficient under Tenth Circuit precedent for a jury to infer his approval and agreement with the actions of TPD. (*Id.*)

Plaintiff further alleges Bynum is liable "due to his personal involvement and responsibility to adopt, enact, ratify, enforce, a maintain the policies and practices that caused the injuries and damages to Ms. Paris." (*Id.* at ¶ 197).

## II.

### TENTH CIRCUIT PRECEDENT RECOGNIZES LIABILITY FOR POST-INCIDENT RATIFICATION OF CONDUCT CONSISTENT WITH POLICY

Defendant's lone argument on ratification is that Bynum never provided prior approval for the acts of the other Defendants, and for that reason, Plaintiff has failed to establish a ratification claim. In other words, Defendant argued that ratification must take place prior to the conduct in order to establish causation. Defendant misapprehends the argument.

First, Defendant's citation to *Bryson v. City of Oklahoma City*, 627 F. 3d 784 (10th Cir. 2010) does not align with the facts of this case. Where Bynum reviewed the body cameras and publicized confidence in the investigation performed by TPD, in *Bryson,* the Tenth Circuit found "none of the evidence in the record suggests the City ratified Ms. Gilchrist's falsification of her test results and concealment of exculpatory evidence regarding Plaintiff once the City learned of these particular actions." *Id.* at 790. Defendant's reliance upon *Bryson* is misplaced because here there is evidence that Bynum approved of TPD's conduct once it became public. The reason Bynum is

unable to support his position is because the Tenth Circuit precedent recognizes liability for post-incident ratification, which occurred in this case.

Under Tenth Circuit precedent, there are two types of ratification that can give rise to liability: One form involves pre-incident ratification of a particular course of conduct, the other form involves post-incident ratification of conduct as being "consistent with" existing policy or practice. *See, e.g., Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (*citing Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (holding that, because city policymaker failed to change policies or discipline or reprimand officials, the jury was entitled to conclude that the complained-of practices were "accepted as the way things are done and have been done in" that city), *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.18 (5th Cir. 2001) (explaining that *Grandstaff* affirmed municipal liability because a policymaker's post-incident actions can ratify the prior misconduct). Plaintiff explicitly pled post-incident ratification, to include the type of evidence recognized in *Grandstaff*, that would support an inference of approval sufficient to impose liability.

The Tenth Circuit addressed a similar claim in *J.B. v. Wash. Cty.*, 127 F.3d 919 (10th Cir. 1997). In *J.B.*, the Tenth Circuit considered a deputy's decision to remove a child from her home, and the sheriff's post-incident testimony that "he approved Deputy Humphreys's actions 'as being in accordance with [County Sheriff's Office's] policies and procedures." (*Id*. at 924) (*quoting J.B. v. Wash Cty.*, 905 F.Supp. 979, 985, n.7 (D. Utah 1995)). Because the sheriff acknowledged that the deputy's decision to remove the child was consistent with policy, the Tenth Circuit held the

conduct was fairly attributable to the municipal entity. *See also*, *Lakey v. City of Wilson*, No. CIV-20-152-RAW, 2022 U.S. Dist. LEXIS 17725, at *8 (E.D. Okla. Feb. 1, 2022) ("Plaintiffs have sufficiently pled that [sheriff] ratified [deputy's] specific unconstitutional actions as well as the basis for those actions.") The same type of allegation exists here.

Defendant suggests that Plaintiff has failed to allege a causal link between the ratification and the alleged unconstitutional conduct, but again, that contention misapprehends the nature of post-incident ratification and the type of evidence that would allow a jury to infer approval. Under *Cordova* and *Grandstaff*, a plaintiff may establish liability of a final policymaker through post-incident conduct, to include a failure to discipline policy violations, provide new training, or implement new policies. *See*, *e.g.*, *Lakey*, *supra*. Plaintiff alleged the necessary factors and Defendant made a strategic decision against addressing the claim as pled. For these reasons, Plaintiff respectfully requests the Court deny the motion.

## II.

### PERSONAL PARTICIPATION IS MORE BROAD THAN GIVING DIRECTIONS AT THE SCENE

"[T]o establish supervisory liability, a plaintiff must show that (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citation omitted). "For liability under section 1983, direct participation is not necessary. Any

4

official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (*quoting Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir.), *cert. denied*, 488 U.S. 856 (1988)).

Defendant's motion did not address the various ways a final policymaker can "personally participate" in a constitutional deprivation, and the one argument it made did not address the allegation asserted by the Plaintiff. Defendant cannot prevail on the motion by failing to address the allegations as pled. For these reasons, Plaintiff respectfully requests the Court deny the motion.

### III.

#### BYNUM IS NOT ENTITLED TO QUALIFIED IMMUNITY

When a defendant asserts a qualified-immunity defense, the burden shifts to the plaintiff to submit evidence to show (1) the violation of a constitutional right, (2) that was clearly established at the time of the violation. *See Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). For the law to be clearly established, "[t]he contours of the constitutional right at issue 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The "contours of" a particular right are "sufficiently clear" to put a reasonable

official on notice where a plaintiff (1) identifies an on-point Supreme Court or published Tenth Circuit decision or (2) shows the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains. *Id. See also Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015), *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010). Precedent is considered "on point" if it involves "materially similar conduct" or applies "with obvious clarity" to the conduct at issue. *See Estate of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016).

However, this is not to suggest that a prior case must have identical facts before it will put reasonable officials on notice that their specific conduct is unconstitutional. *See Perry v. Durborrow*, 892 F.3d 1116, 1126 (10th Cir. 2018), *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir.2006) ("[A] general constitutional rule . . . can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful." (internal quotation marks and alteration omitted)). *See also Casey v. City of Federal Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007).

### A. NOTICE FROM PRIOR CASES

In resolving the clearly established inquiry based on notice from prior cases, the Tenth Circuit has adopted a sliding-scale test. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). Under that approach, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id*.

In this case, Bynum is the final policymaker responsible for implementation of

TPD policies and practices. Plaintiff has alleged the encounter between herself and the TPD officer-Defendants was consistent with TPD policy and practice as approved and ratified by Bynum, *e.g.*, deliberately tormenting and escalating encounters with citizens suffering from a mental health crisis is "accepted as the way things are done and have been done in" in Tulsa. In moving for qualified immunity at the motion to dismiss stage, Bynum necessarily argues here that such a proposition is not clearly established and that TPD officers may deliberately torment and escalate encounters with citizens in need. As set forth below, the proposition lacks merit.

The Tenth Circuit has a long history of protecting the rights of citizens suffering from a mental health crisis from reckless conduct by police in their encounters with citizens. In *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) the court held that a plaintiff had plausibly alleged a constitutional violation when police rushed a car they knew to be occupied by a suicidal man. *Id.* at 839-41. More recently, in *Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019), the Tenth Circuit affirmed denial of qualified immunity to an officer who shot an emotionally disturbed man wielding a bat. *Id.* at 216 ("Husk approached Ceballos quickly, screaming at Ceballos to drop the bat and refusing to give ground as Ceballos approached the officers.")

Both cases stand as super precedent here because unlike the facts in *Allen* and *Husk*, there was no imminent risk to the officers. *See, e.g., McCowan v. Morales*, 945 F.3d 1276, 1286 (10th Cir. 2019) ("[T]his precedent is not only on point—it is *a fortiori* or super precedent.") In *Allen* and *Husk*, the Tenth Circuit held that despite the

7

existence of a gun, the officers acted recklessly in creating the need to use force. In both cases, the officers had a constitutional obligation to avoid reckless behavior that would amplify the need to use force. The same is true here, except in this case there was no gun or weapon, and no imminent risk to the officers. Under *Allen* and *Husk*, it was clearly established that officers had an obligation to avoid acting recklessly in manner that would escalate the need to use force, but that is precisely what they did. The Defendant officers escalated the encounter by making it difficult, if not impossible, for the Plaintiff to peacefully engage them.

By the incident date, every reasonable person would know it is unlawful to recklessly escalate a police-citizen encounter. In this case, that unremarkable proposition applies with equal force to Bynum, who, with the luxury of hindsight, engaged in post-incident ratification of reckless conduct by multiple TPD officers that resulted in the arrest, detention, injures, inhumane treatment, and humiliation of a fellow citizen suffering a mental health crisis. By taking no action to condemn or correct these unlawful actions, Bynum's own inaction supports the inference that he approves and condones the behaviors that resulted in Plaintiff's deprivations.

B.     **NOTICE THROUGH OBVIOUS MISCONDUCT**

"Some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing. Indeed, it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Browder v. City of*

8

*Albuquerque*, 787 F.3d 1076, 1082-83 (10th Cir. 2015).

Even if the Court determines the law was not clearly established sufficient to impose supervisory liability on Bynum, Plaintiff contends the conduct at issue is so egregious that no reasonable officer would require a case on point to notifiy them of its unlawfulness. By extension, Plaintiff contends that no reasonable supervisor reviewing these facts could plausibly arrive at any conclusion other than a determination that the TPD officers engaged in reckless conduct reasonably tailored to escalate a confrontation with an emotionally troubled woman with the specific intent of unnecessarily creating a use of force situation. Ratifying such conduct plausibly establishes that Bynum's own policies or practices are the moving force behind the deprivation. For these reasons, Plaintiff respectfully requests the Court deny the motion.

## VI.

**DISMISSAL OF ANY PUNITIVE DAMAGE CLAIM IS INAPPROPRIATE AT THIS STAGE**

Finally, Defendant seeks dismissal of the punitive damages claim. This argument is premature. As Judge Eagan recently wrote in response to a similar argument urged by City of Tulsa, "[f]irst, punitive damages are a potential remedy, not a claim for relief. Second, ruling on the issue of punitive damages is premature at this early stage." *Buck v. Rhoades*, No. 21-CV-0295-CVE-SH, 2022 U.S. Dist. LEXIS 64274, at *28 (N.D. Okla. Apr. 6, 2022). Plaintiff contends the motion to dismiss the punitive damages claim should be denied for the same reasons.

**WHEREFORE**, Plaintiff respectfully requests the Court deny the motion and enter such other relief as the Court deems just and equitable.

Respectfully submitted,

BRYAN & TERRILL

_s/Steven J. Terrill_
Steven J. Terrill, OBA # 20869
BRYAN & TERRILL LAW, PLLC
3015 E. Skelly Dr., Suite 400
Tulsa, OK 74105
T/F:   (918) 935-2777
sjterrill@bryanterrill.com
*Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I certify that on the 2nd day of August, 2022, a complete and accurate copy of the foregoing instrument was served electronically to the Clerk of the Court using the ECF system for filing and transmittal of a notice of electronic filing to the counsel of record in this case.

_s/Steven J. Terrill_
Steven J. Terrill