**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1)   LADONNA PARIS,

      Plaintiff,

vs.

(1)   RONNI CARROCIA, *et al.*,

      Defendants.

Case No. 22-CV-235-TCK-JFJ

**DEFENDANT RONNI CARROCIA'S**
**REPLY IN SUPPORT OF HER PARTIAL MOTION TO DISMISS**

      Plaintiff Paris's Response to Defendant Carrocia's Motion to Dismiss, Doc. 28, is wrong on the law and misleading on the facts. Paris's narrative, see Doc. 28, pgs. 1-3, stems from an apparent belief that the entire interaction between herself and law enforcement is encapsulated in the spliced, edited, and disordered video that was published on YouTube after the incident. As discussed below, the circumstances of the subject incident were far, far broader. This brief seeks to correct the misstatements and rebut the paper-thin legal conclusions in Paris's response brief.

**I.   PLAINTIFF'S RECITATION OF THE SUBJECT FACTS IS MISLEADING.**

      Defendant acknowledges the limited scope of the Court's review at this stage of the suit—whether, taking Paris's allegations as true, she's stated a legal claim—but Paris is blatantly trying to push a false narrative about the subject encounter that simply cannot go

unaddressed, even if the Court can't consider it now. To that end: Paris's framing of the subject facts and reliance on the doctored video of the subject events is very misleading. The truth is, Paris illegally barricaded herself in the Habitat for Humanity bathroom for over four hours contrary to the wishes of the owners, who wanted her to leave and had told her to do so. Paris forced law enforcement's involvement, not the other way around. Regardless of what Paris now claims she was then believing, no law enforcement officer had harmed Paris's dog, and no law enforcement officer was trying to harm Paris.

Much to the contrary. The fact is, officers, including Officer Carrocia, spent significant effort and time to try and get Paris to leave Habitat for Humanity without escalating the situation. In fact, ***the assembled law enforcement officers asked Paris nearly fifty times over the course of the encounter to leave the bathroom***. But Paris steadfastly refused to do so. Instead, she began spraying aerosol spray throughout the bathroom and through cracks between the door and the doorframe. Then, whilst still in the bathroom, Paris appeared to attempt to light the aerosol spray on fire, a blatant effort to harm herself, the responding officers, the store, and everyone else inside.

Given these circumstances and Paris's dangerous escalation thereof, the responding officers knew they had to remove Paris from the bathroom, and do so immediately. Thus, the responding officers called in additional assistance to help get Paris out. All the while, Officer Carrocia continued to warn Paris that if she did not open the door and come out, it would require the officers to forcibly open the door and remove her. Paris remained unpersuadable. So, when the third officer arrived, the assembled officers breached the door and arrested Paris. Each and every one of Paris' allegations must be considered in this

context—not the misleading set of events laid out in Plaintiff's Complaint and Response to Officer Carrocia's Motion to Dismiss.

## II. VERBAL ABUSE ALONE IS INSUFFICIENT TO FORM THE BASIS OF AN EQUAL PROTECTION CLAIM.

In her Motion to Dismiss, Officer Carrocia contends that Paris's claim of disparate treatment in violation of the Equal Protection Clause of the Fourteenth Amendment fails because it stems only from the language Officer Carrocia used towards Paris before the subject use-of-force. In response, Paris argues that Officer Carrocia violated her rights not via Officer Carrocia's language but by the broader act of treating Paris differently from similarly situated detainees *because* of Paris's alleged disability. *See* Doc. 28, pp. 3-6. There are several problems with this response.

First, it remains true that the *method* by which Plaintiff claims Officer Carrocia treated her differently was through Officer Carrocia's words. *See* Compl., Doc. 8-1, pgs. 17-18, ¶¶ 74-80. Second, Plaintiff fails to rebut Officer Carrocia's authorities with similar ones indicating that verbal abuse alone *can* form the basis of an Equal Protection claim. *Id.* at pgs. 3-5. Third, Plaintiff fails to show how any alleged verbal abuse violated a right to which she was entitled. The Equal Protection Clause bars the government from denying any person within its jurisdiction the equal "protection" of the law, *see* U.S. Const., Amend. XIV, but the "protection" of the law is not withheld from a citizen when an officer simply— and only—uses inappropriate or improper language toward that citizen. The "law," in that scenario, is not applied; there is, generally, no power of the state conveyed through an officer's verbal harassment alone; no constitutional harm dealt by mere words, even

offensive ones. *See Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) ("The question in the equal protection context, however, is not just whether the conduct is racially motivated but also whether that action deprives a person of 'equal protection of the laws.' U.S. Const. amend. XIV. **Where the conduct at issue consists solely of speech, there is no equal protection violation**") (emphasis added); *see also Hernandez v. Florida Dep't. of Corrections*, 281 F. App'x. 862, 867 (11th Cir. June 9, 2008) ("Moreover, Hernandez, like all inmates, does not enjoy a fundamental right to be free of verbal abuse, so that could not support a traditional equal protection claim, either"). For those reasons, there is no deprivation of a right secured by the Constitution, which is a prerequisite to a claim under 42 U.S.C. § 1983. *See American Manufacturers' Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

In lieu of any of the above-referenced reasoning, Plaintiff attempts to explain why simple insults could violate the Equal Protection Clause by examining an allegedly contrasting hypothetical: "the officer who berates a person because of their disability" versus the officer who berates a person "while also handcuffing the person because of their disability." *See* Resp., Doc. 28, pg. 5. According to Plaintiff, "it would be arbitrary to deny the person relief in the first scenario [words alone] but allow it in the second [words plus actions]." *Id.* at pg. 5 (words in brackets added). Yet that is precisely the distinction the Constitution draws, for the reason discussed above—mere speech, by itself, does not invade any extant constitutional right. Thus, name-calling without any appreciable injury does not violate constitutional rights. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986). On the other hand, verbal statements accompanying an "appreciable injury" may

lead to a cognizable equal protection claim. *See Cole v. Fischer*, 379 F. App'x. 40, 43 (2d. Cir. 2010).

Here, Paris does not allege that any of Officer Carrocia's language occurred during the subject use-of-force and arrest. It is plainly clear that the only source of Paris's Equal Protection claim is Officer Carrocia's language prior to entering the bathroom. Because verbal abuse is the only disparate treatment Paris is claiming, she has failed to allege a sufficient basis for her Equal Protection claim and it should be dismissed with prejudice.

### III. DEFENDANT CARROCIA'S CONDUCT WAS NEITHER EXTREME NOR OUTRAGEOUS.

In her Motion to Dismiss, Officer Carrocia contends that Paris's Intentional Infliction of Emotional Distress (IIED) claim fails because Plaintiff did not allege facts that plausibly show Officer Carrocia engaged in extreme or outrageous conduct. Paris responds that, based on the setting in which Defendant Carrocia allegedly insulted Paris, Officer Carrocia's conduct was extreme and outrageous such that her IIED claim should survive. Additionally, Paris alleges that the public response to a heavily edited video of the incident plausibly shows that the conduct was extreme and outrageous. However, given the setting in which the alleged verbal abuse took place, Defendant Carrocia's conduct was clearly not extreme or outrageous. Moreover, Paris's citation to social media comments do nothing to change the fact that, as alleged, Paris's IIED claim fails as a matter of law.

First, Paris fails to provide a full picture of the setting in which Defendant Carrocia allegedly insulted her. According to Paris's Complaint, police were called to her seminary school after she began exhibiting signs of a mental health episode. *See* Compl., Doc. 8-1,

at pg. 9-10, ¶ 11-14. Thereafter, she left the seminary school in a car, and police were forced to pursue. *Id.* at pg. 10, ¶ 16. Paris drove to the Habitat for Humanity store and locked herself in the bathroom of the business for over four hours. *Id.* at pg. 10, ¶ 18. Yet in her response brief, she deigns to claim that Officer Carrocia "was exercising her authority over Ms. Paris and had her in her custody" and that "Ms. Paris could not have simply removed herself from the situation to avoid being subjected to such torment." *See* Resp., Doc. 28, at pg. 7. This is a ludicrous, false statement. Paris also claims she was "being nothing short of respectful—even pleasant—to Defendant Carrocia and the other defendant officers." *Id.* This too is abjectly false.

The reality is that Paris, by her own decision-making, created a dangerous situation that required law enforcement response. She was indisputably trespassing at the Habitat for Humanity store, and, worse, escalated the situation over Officer Carrocia and others' clear commands. If Officer Carrocia's language during this process was discourteous, it was only just so, and, moreover, it remains that public ridicule does not constitute an "[e]xtraordinary transgression of the bounds of civility." *United States ex rel. Williams v. City of Elk City*, No. CIV-07-139-W, 2008 WL 11343000, at *3-4 (W.D. Okla. Oct. 16, 2008). More broadly, discourteous behavior exhibited by law enforcement officers does not typically constitute extreme or outrageous conduct sufficient to form the basis of an IIED claim. *See*, *e.g*., *Pawlicki v. City of Ithaca*, 993 F. Supp. 140 (N.D.N.Y. 1998). When examining the context of the incident, Defendant Carrocia's conduct was clearly not extreme or outrageous. Paris's IIED claim against Defendant Carrocia should be dismissed.

Second, Plaintiff cites a bevy of internet commenters, including one named, anonymously, "Goodforyouman," to support her theory that the general public believed Defendant Carrocia's conduct to be outrageous. *See* Resp., Doc. 28, pp. 7-9. This argument, and the pages of internet comments attached as exhibits in support thereof, are irrelevant to the IIED inquiry for at least two reasons. First, the video Plaintiff cites, and to which the string of comments are in reference, ***is not the full video of the interaction.*** It is a five-minute, fifty-five second piece of footage[1] that is cut from a lengthy body camera footage video, spliced into segments, and then arranged to make it appear that the highlighted conduct occurred in a short, compressed span of time. In reality, and as discussed in Defendant's Motion and elsewhere in this reply, the true interaction lasts much longer and shows Officer Carrocia and others working tirelessly to get Paris out of the bathroom. A comment on the video from user "Kelly From OK" makes it clear how badly the video misled public viewers:



Kelly From OK 4 months ago
Dang, they didn't even try to talk to her or find out what would work. Unprofessional.
👍 11  👎  REPLY

This user's comment is emblematic of the problem in citing these sorts of things as plausible evidence that Officer Carrocia's conduct was outrageous; Officer Carrocia and others spent a *significant* amount of time talking to Paris and trying to get her to leave the bathroom in which she voluntarily locked herself. The comments on edited video to which

---

[1] https://www.youtube.com/watch?v=t16uCMhjPnE

Paris cites cannot support her IIED claim because most are presumably not made with knowledge of the other, much lengthier footage, which includes the officers' nearly fifty efforts to persuade Paris to leave the bathroom voluntarily.

Second, if a plaintiff could designate conduct as extreme or outrageous simply by referring to supportive social media comments, then nearly every IIED claim stemming from a videotaped police interaction that was posted to YouTube would survive a motion to dismiss because citizen-police interactions are polarizing—to put it mildly—and there are generally few barriers on who can comment and what they can say. Using social media comments as evidence of extreme or outrageous behavior is a dangerous prospect and one that this Court should not entertain. Instead, the Court should consider the context in which this alleged discourteous behavior occurred, find that it was not extreme or outrageous, and dismiss Paris's Intentional Infliction of Emotional Distress claim.

IV. **AT THE TIME OF THE TASER ACTIVATION, DEFENDANT CARROCIA WAS INCAPABLE OF USING THE TASER ON PLAINTIFF, THUS HER ASSAULT CLAIM SHOULD BE DISMISSED.**

Lastly, in her Motion to Dismiss, Officer Carrocia contends that Paris's assault claim fails because Paris did not allege facts that plausibly show that she was in imminent apprehension of harmful or offensive contact. Paris responds that because Officer Carrocia could have used the taser on Ms. Paris without significant delay, her assault claim should survive. However, as already discussed in Defendant Carrocia's Partial Motion to Dismiss, at the time of taser activation, a locked door separated Ms. Paris from the taser, and it was Paris, not Carrocia, that controlled the lock. Carrocia could not carry out any alleged threat

associated with the taser activation with any immediacy. Therefore, Paris's assault claim against Defendant Carrocia fails as a matter of law.

This situation is comparable to one where a defendant points an unloaded gun at a plaintiff, while the plaintiff knows the gun is unloaded. As the Second Restatement of Torts explains:

> "*What is not an apprehension.* If the other, though knowing of the act done by the actor and realizing that it is intended to cause him a bodily contact, believes, whether reasonably or unreasonably, that the means adopted by the actor are in and of themselves incapable of effectively carrying out his purpose, he has not been put in such an apprehension as is necessary to make the actor liable. **Thus, if the actor, believing a revolver to be loaded, points it at another and threatens to shoot him, the actor is not liable under the rule stated in § 21 if the other believes that the revolver is unloaded**. This is true though the other is mistaken in his belief, the revolver is in fact loaded, and the actor is only prevented from carrying out his purpose by a bystander snatching the revolver from him."

Restatement (Second) of Torts § 24 (1965) (emphasis added). Similar to the situation described above, at the time of taser activation, Paris could not have reasonably believed that Officer Carrocia was capable of carrying out her alleged threat of taser discharge. Much like one cannot shoot another with an unloaded firearm, Defendant Carrocia could not tase Paris when a locked door separated the two. Moreover, Paris was aware of this physical barrier that separated her from the taser, as she was the one who voluntarily and illegally locked herself in the bathroom. She could only be tased if the door was breached, which was not effectuated until a third officer arrived on scene. Thus, Paris could not have been placed "in such an apprehension as is necessary to make [Defendant Carrocia] liable[,]" for assault, and Paris' claim for assault against Defendant Carrocia should be dismissed with prejudice.

## V.     PLAINTIFF'S FALSE LIGHT CLAIM IS CONCEDED, THUS, THE SAME SHOULD BE DISMISSED.

Paris has conceded that her claim for false light against Defendant Carrocia should be dismissed. Based on the same concession, Defendant Carrocia respectfully requests that Paris's False Light claim against Defendant Carrocia be dismissed.

## VI.    CONCLUSION.

For the reasons discussed herein and in Defendant Carrocia's Partial Motion to Dismiss, the Court should grant Defendant's request and dismiss Plaintiff Ladonna Paris's Equal Protection, Intentional Infliction of Emotional Distress, and Assault claims.

Respectfully submitted,

Date: August 9, 2022

s/ Jeffrey C. Hendrickson
Robert S. Lafferrandre, OBA #11897
Jeffrey C. Hendrickson, OBA #32798
**PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P.**
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
jhendrickson@piercecouch.com

*Attorneys for Defendants*
*Ronni Carrocia and Ty Burns*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2022, I electronically submitted the attached document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Damario Solomon-Simmons | dss@solomonsimmons.com |
| Kymberli J.M. Heckenkemper | kheckenkemper@solomonsimmons.com |
| Steven J. Terrill | sjterrill@bryanterrill.com |
| J. Spencer Bryan | jsbryan@bryanterrill.com |
| R. Lawson Vaughn, III | lvaughn@cityoftulsa.org |
| Hayes Thomas Martin | hmartin@cityoftulsa.org |

          s/ Jeffrey C. Hendrickson
          Jeffrey C. Hendrickson