**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1.  LADONNA PARIS, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:22-cv-00235-TCK-JFJ |
| 1.  RONNI CARROCIA, an individual; | ) | |
| 2.  DAYLAN ROOT, an individual; | ) | |
| 3.  TY BURNS, an individual; | ) | |
| 4.  CITY OF TULSA, a municipal corporation; | ) | |
| 5.  GEORGE THERON BYNUM IV, an individual; | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT BYNUM'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS

Defendant George Theron Bynum IV ("Bynum") respectfully submits his Reply to Plaintiff's Response To Defendant Bynum's Motion to Dismiss (Doc. 29) filed on August 2, 2022. Plaintiff is unable to show she has alleged viable claims against Mayor Bynum, individually, for ratification or supervisory liability and any amendment would be futile. Additionally, Defendant Bynum is entitled to the complete defense of qualified immunity. All of Plaintiff's claims against Mayor Bynum fail and should be dismissed with prejudice.

## PLAINTIFF FAILS TO ALLEGE CLAIMS THAT ARE "PLAUSIBLE" ON THEIR FACE.

Plaintiff's Complaint cannot withstand Defendant's Motion to Dismiss. The Supreme Court of the United States has recognized, since at least 2007, that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do". *Bell Atlantic Corp v. Twombly* 550 U.S. 544, 555 (citations omitted) 127 S.Ct. 1955.

The Supreme Court held "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp v. Twombly* 550

U.S. 544, 555 (citations omitted) 127 S.Ct. 1955.  Here, the Court is not bound to accept as true Plaintiff's unsupported legal conclusions that Mayor Bynum is individually liable for "ratification" of the alleged conduct of the Defendant Officers or that Mayor Bynum is individually liable for the officers' alleged violations due to alleged "personal involvement" and responsibility for policies and practices that were in place. (Complaint, Doc. 8-1 at ¶¶ 81-92 and 196-203).

### A.   Plaintiff Cites To No Authority For Her Post-Incident Ratification Theory.

In her Complaint, Plaintiff alleges Mayor Bynum should be held individually liable for the alleged unconstitutional conduct of the Defendant Officers because he expressed confidence in the investigation conducted by the Tulsa Police Department and did not discipline the officers, implement any new policies, or provide any new training. (*Id.* at ¶¶ 91-92). "Failing to adequately investigate or punish does not count as ratification." *Lynch v. Board of County Commissioners of Muskogee County, Oklahoma*, 786 Fed. Appx. 774, 787 (10th Cir. 2019). "The final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the *moving force, or cause*, of the alleged constitutional violation." *Dempsey v. City of Baldwin*, 143 Fed. Appx. 976, 986 (10th Cir. 2005) (emphasis added). Plaintiff fails to address how ratification after conduct could be a cause of such conduct as well as the well-settled law and other authorities cited in Bynum's Motion and, instead, chooses to cite to distinguishable cases against municipalities that do not involve the analysis of holding a policymaker individually liable for post-incident ratification.

In her Response (Doc. 29), Plaintiff cites to the case of *Bryson v. City of Oklahoma City*, 627 F.3d 784 (10th Cir. 2010) where a former inmate brought a civil rights action under *§ 1983* against the City of Oklahoma City, the District Attorney, and a forensic chemist

(Gilchrist) formerly employed by the City. Gilchrist had given testimony that helped convict the plaintiff for a rape and kidnapping he did not commit back in 1983. The plaintiff sued the *City* under a ratification theory, among others, and the district court granted the City's motion for summary judgment. In affirming the district court's ruling, the Tenth Circuit stated, "[a] municipality may not be held liable under *§ 1983* solely because its employees inflicted injury on the plaintiff. Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and injury alleged." *Id.* at 78.

In support of his ratification theory, the plaintiff alleged police supervisors had promoted the chemist in the face of repeated criticisms of her work. The Court determined, however, that no decisionmakers for the City had learned of any defects in the forensic analysis in the plaintiff's case until 2001 and, therefore, found that the City "***could not have been liable under a ratification theory***". (emphasis added) *Id.* at 790. The Court then points out that there is no evidence that suggests the City ratified her actions even once it learned of them. *Id.*

Contrary to Plaintiff's assertion, the Tenth Circuit has not recognized liability against a policymaker for post-incident ratification. The significance of the *Bryson* Court stating there was no evidence of post-incident ratification, if any, (explained in *Grandstaff*) is that if there was ratification of the conduct, it could have been circumstantial evidence of the existence of a city policy that was in place back in 1983 that may have been the moving force behind Gilchrist's unconstitutional acts. Therefore, it may have been used to show liability on the part of the *City*. It does not provide support for the proposition that once a City official learned of it in 2001 he or she could be individually liable for ratification if they failed to

discipline or implement new training or policies. As it would have been 18 years or more after the wrongful conduct, any ratification in 2001 could, obviously, not have been a causal link between the policy or custom and the injury alleged.

Plaintiff's reliance on the case of *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) is flawed and not helpful here. There, the plaintiff sued the City and four of its police officers personally involved in the shooting of an innocent victim they mistook for a fugitive. There was no claim for ratification against a policymaker. As was found by the Court in *Harris v. Daviess-Dekalb County Regional Jail*, 2016 WL 3645201 at *7 (W.D. Missouri, 2016), the *Grandstaff* Court "considered whether the City could be liable; it did not analyze whether an individual supervisor could be liable". The Court determined that the Police Chief was the policymaker and that his post-incident actions could be considered as circumstantial evidence of the City having an existing policy or practice in place at the time of the alleged conduct that may have been the moving force behind the alleged wrongful conduct. Despite Plaintiff's assertion to the contrary, this would support a *municipal liability* claim and not the liability of a final policymaker.

Additionally, Plaintiff cites to *J.B. v. Wash. Cty.*, 127 F.3d 919 (10th Cir. 1997), which is also easily distinguishable and not supportive of her proposition of post-incident ratification against Bynum. In *J.B.,* the plaintiff sued the *County* for the county officials' removal of her child during a child abuse investigation and the Court granted summary judgment to the County. There was no ratification claim against the Sheriff. Like *Grandstaff*, the post-incident testimony of the Sheriff approving the actions of Deputy Humphreys was used to show that the actions of Humphreys constituted a policy, procedure, or custom of Washington County. *Id*. at 923-924. Unlike the claim here against Bynum, the post-incident conduct of the Sheriff

4

was not used to support a ratification claim against the Sheriff for a failure to discipline or implement new policies or training.

Finally, Plaintiff also cites to the Eastern District matter of *Lakey v. City of Wilson*, No. CIV-20-152-RAW, 2022 U.S. Dist. LEXIS 17725, at *8 (E.D. Okla. Feb. 1, 2022). There, a claim for ratification was alleged against the Carter County Sheriff in his official capacity for ratifying the alleged wrongful actions of a Carter County Deputy as being consistent with existing Carter County policy or practice. This goes to show there was a County policy or practice in place at the time of the conduct at issue that could have been the moving force behind the conduct and does not support a claim against the policymaker, individually, based on post-incident conduct.

Plaintiff fails to grasp the distinction between claims against a municipal entity and claims against a policymaker, individually, for ratification. In her Response, Plaintiff did not address *Osborn v. Meitzen*, 2020 WL 3800547 (E.D. Okla. 2020), *Estate of Valverde v. Dodge*, 2017 WL 1862283 (D. Colo. May 9, 2017) or *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (cited in Bynum's motion). These cases clearly show any ratification on the part of a policymaker, such as the claim here against Bynum, must take place *prior to* the alleged wrongful conduct in order to be a cause of the injury alleged. Plaintiff has also asserted claims against the City. Plaintiff's ratification claim against Mayor Bynum must be dismissed.

**B. Plaintiff Cannot Establish Supervisory Liability.**

In her Response, Plaintiff cites to the matter of *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011) for the elements that must be met to show a claim for supervisory liability. She then fails to show how these elements are met in her Complaint. In *Brown*, the plaintiff was improperly required to register as a sex offender. A supervisory liability claim was made

against Secretary Williams because he was charged with notifying sex offenders of their duty to register. The Court found, however, that the Complaint did not specifically allege that Secretary Williams told the plaintiff to register or directed anyone else to make him register. The plaintiff argued that Williams was liable because he signed the policy on which others relied to classify the plaintiff as a sex offender. The Court found this was insufficient to show personal liability against Williams. *Id.* at 1165.

Like the allegations against Williams in *Brown*, Plaintiff Paris merely alleges that Bynum was responsible for the TPD policies in place at the time of her alleged injury. Plaintiff does not identify any policy adopted or implemented for the purpose of discriminating or violating Plaintiff's substantive due process rights. Bynum was not even aware of Plaintiff's subject interaction with TPD officers until after it occurred. Plaintiff's Complaint fails to allege facts that show the requisite personal involvement on the part of Bynum. Just as this was insufficient in *Brown*, the allegations against Mayor Bynum do not meet the standard for supervisory liability and this claim should be dismissed.

### C. Defendant Bynum Is Entitled to the Defense of Qualified Immunity.

As set forth above, Plaintiff cannot establish a constitutional violation. Plaintiff also cannot establish that any such constitutional right was clearly established at the time of any action or inaction by Bynum. Plaintiff's failures are fatal to her claims. Defendant Bynum properly raises a qualified immunity defense. "Under the doctrine of qualified immunity, government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights . . ." *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005).

In responding to an assertion of a qualified immunity defense, the plaintiff must satisfy "a heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citations and internal quotations omitted). First, the plaintiff must establish that the ***particular defendant*** violated a specific constitutional right. (emphasis added) *Id*. Second, the plaintiff must prove that the particular right was clearly established when the conduct occurred. *Id.* In her Response, Plaintiff claims that Mayor Bynum is the final policymaker responsible for the implementation of TPD policies and practices. She then fails to provide any Supreme Court case, published Tenth Circuit decision, or clearly established weight of authority from other courts that would serve to put a reasonable official in Bynum's position on notice that his specific conduct was unconstitutional.

Rather than citing to cases that would show Bynum, the particular defendant, was on notice that his conduct was unconstitutional, Plaintiff points to cases involving police officers' encounters. Plaintiff cites to *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) to show it was found to be a constitutional violation when police rushed a car occupied by a suicidal man. Plaintiff cites to *Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019) to show an officer should be on notice that shooting an emotionally disturbed man wielding a bat may be unconstitutional. The facts of both cases are very different from the instant matter and neither of those cases would serve to inform a reasonable official in Mayor Bynum's position that any of his conduct would violate any person's constitutional rights. Plaintiff asserts that Mayor Bynum's inaction after the encounter supports the inference that he approves and condones the behaviors, however, she cites to no authority for this flawed proposition or that it supports any cause of action against Bynum.

Plaintiff acknowledges she has failed to provide any precedent that would have informed Mayor Bynum that any of his conduct was unconstitutional for supervisory liability. Without citing to any authority, Plaintiff then makes the baseless claim that the actions of the TPD officers were so egregious that ratifying such conduct establishes that Bynum's own policies or practices are the moving force behind the deprivation. (Response at p. 9). As set forth above, post-incident conduct of expressing confidence in TPD's investigation, failing to discipline, and failing to implement new policies or training does not count as ratification and does not support a claim against Bynum, individually. Plaintiff cannot show ratification or supervisory liability, as she cannot show Bynum abused his executive authority. Even so, she cannot show that Mayor Bynum was on notice that any of his conduct was unconstitutional. This is fatal to her claims and they must be dismissed.

**D. Plaintiff's Punitive Damage Claim Against Mayor Bynum Should Be Dismissed.**

Here, Plaintiff Paris alleges nothing more than conclusory statements in her claim for punitive damages against Mayor Bynum. Plaintiff fails to allege any facts to establish that this defendant was motivated by evil motive or intent or was, in any way, reckless or indifferent to Plaintiff's rights. Plaintiff's claims for punitive damages against Defendant Bynum should be dismissed.

## <u>CONCLUSION</u>

Defendant Bynum respectfully requests that this Court dismiss with prejudice each of Plaintiff's claims against him, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

CITY OF TULSA,
a municipal corporation

JACK C. BLAIR,
City Attorney

BY:    /s/R. Lawson Vaughn
R. Lawson Vaughn, OBA # 21557
Senior Assistant City Attorney
Hayes T. Martin, OBA # 32059
Assistant City Attorney
City Hall, One Technology Center
175 East Second Street, Suite 685
Tulsa, Oklahoma  74103
(918) 596-7717 Telephone
(918) 596-9700  Facsimile
*Attorneys for Defendant Mayor Bynum*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the counsel of record in this case.

/s/ R. Lawson Vaughn
R. Lawson Vaughn