# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LADONNA PARIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    Case No. 22-CV-235-TCK-JFJ |
| RONNI CARROCIA; | ) |
| DAYLAN ROOT; | ) |
| TY BURNS; | ) |
| CITY of TULSA; and | ) |
| G.T. BYNUM, IV, | ) |
| | ) |
| Defendants. | |

## OPINION AND ORDER

This case arises from the October 25, 2021, arrest of Plaintiff LaDonna Paris (Plaintiff) by Tulsa Police Department (TPD) officers Ronni Carrocia (Carrocia), Daylan Root (Root), and Ty Burns (Burns) (collectively, Officers). Plaintiff, a 70-year-old woman suffering from late-onset bipolar disorder, was in the midst of a severe manic episode at the time of her arrest. Plaintiff alleges that Officers verbally harassed, threatened, and taunted her and unnecessarily escalated the situation, resulting in the use of excessive force, Plaintiff's arrest, and her detention on trumped-up charges. Plaintiff filed her Complaint on May 10, 2022, asserting 14 federal and state law claims for relief against the Officers, the City of Tulsa (City), and the Mayor of the City of Tulsa and final policymaker for TPD, G.T. Bynum, IV (Bynum). (Doc. 8-1). Defendant Carrocia filed a partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), challenging four of the claims asserted against her. (Doc. 19). Separately, Defendant Bynum moved to dismiss the claims against him, arguing that Plaintiff failed to state a claim against him and that he is entitled to qualified immunity. (Doc. 22). Plaintiff filed responses to each motion, (Docs. 28, 29), conceding that her false light claim against Carrocia should be dismissed, (Doc. 28 at 1), but contesting all other issues raised in

the motions. Carrocia and Bynum each filed a reply to Plaintiff's response briefs. (Docs. 30, 31). Accordingly, Plaintiff's false light claim against Carrocia is dismissed, and the Court now addresses the contested issues raised in the motions.

## I.   BACKGROUND

According to the Complaint, Plaintiff is a 70-year-old woman diagnosed with late-onset bipolar disorder. (Doc. 8-1 at ¶ 2). On October 25, 2021, while at Phillips Theological Seminary where she attends graduate school as a seminarian, Plaintiff began experiencing paranoia and delusions—signs of a significant manic episode brought on by her bipolar disorder. (*Id.* at ¶ 11, 13, 17). Noticing Plaintiff's behavior, colleagues at Phillips contacted 9-1-1 out of concern for Plaintiff's wellbeing. (*Id.* at ¶ 12). EMTs were the first to arrive on the scene and observed Plaintiff in a manic state, but as officers Root and Carrocia arrived, Plaintiff got into a motor vehicle and drove to ReStore, a thrift store located in Tulsa, Oklahoma. (*Id.* at ¶¶ 13-15). Root and Carrocia followed Plaintiff to the store. (*Id.* at ¶ 16). Believing that the officers were going to kill her—on account of her paranoia and delusions—Plaintiff went into the store and locked herself in the restroom and refused to come out for approximately 4 hours. (*Id.* at ¶¶ 17-18). While in the restroom, Plaintiff could be heard rambling incoherently to herself, and her behavior was so evident of a mental health crisis, that Carrocia referred to Plaintiff as an "85"—the TPD callsign signifying a person's need for mental health treatment. (*Id.* at ¶¶ 18, 27-15).

Despite clear manifestations of severe mental distress, the Complaint alleges that Carrocia demanded that Plaintiff exit the restroom, threating "I'm gonna kick this door down and rip you outta there . . . [i]t's simple for you to come out and it's gonna be a good time when you don't." (*Id.* at ¶¶ 30-32). Meanwhile, Carrocia plotted with Root to "throw [Plaintiff] to the ground" once Plaintiff exited the restroom. (*Id.*) At one point, Carrocia asked Plaintiff if she wanted to "get

tased," while activating the taser and holding it next to the restroom door, making it audible for Plaintiff to hear on the other side of the door. (*Id.* at ¶¶ 24, 254-255). At another point, Carrocia told Plaintiff, "[y]ou're gonna get pepper sprayed and it's gonna be a good time."  (*Id.* at ¶¶ 25-26). Accompanying the threats, Carrocia openly mocked Plaintiff's mental health crisis, calling Plaintiff "bonkers, "basket case," "coocoo bird," "cray," and "douche bag." (*Id.* at ¶ 70).

Given Plaintiff's refusal to exit the restroom, Carrocia and Root waited for officer Burns to arrive at the store and assist in knocking down the restroom door. (*Id.* at ¶ 33). When Burns arrived, he knocked down the door, and the Officers slammed Plaintiff to the ground, bloodying her face and chipping her tooth. (*Id.* at ¶ 34). As Plaintiff pleaded with the Officers to stop hurting her, she cited scripture verses and told the Officers, "I'll go to jail. I don't mind." (*Id.* at ¶¶ 34-35). During the arrest, Burns pulled Plaintiff's pants down to seize a pack of cigarettes, exposing Plaintiff's buttocks. (*Id.* at ¶ 36). After taking Plaintiff outside of the store, Carrocia told Plaintiff to sit down and proceeded to kick Plaintiff's leg, forcing Plaintiff to the ground before having the opportunity to comply with the request. (*Id.* at ¶ 40). According to the Complaint, Plaintiff was arrested and charged with several bogus charges, which as Carrocia explained to Plaintiff, "If you're gonna play stupid games, you're gonna win stupid prizes." (*Id.* at ¶ 41).

Plaintiff was brought to the jail for booking, and the Complaint alleges that a worker at the jail inquired whether Plaintiff should be brought "down to medical," to which Carrocia responded, "Or they could just refuse it." (*Id.* at ¶ 43). Plaintiff was apparently placed in solitary confinement without any treatment for her bipolar disorder, which is perhaps explained by Carrocia's comment during booking and the fact that Carrocia omitted any reference to Plaintiff's mental health condition in her incident report and booking data sheets (*Id.* at ¶¶ 42, 44). On or about November

23, 2021—nearly a month after her arrest—Plaintiff was transferred to Tulsa Behavioral Health, after having been given a court date for her charges. (*Id.* at ¶ 45).

Plaintiff now brings suit against Officers, Bynum, and City, advancing 14 claims for relief under various state and federal laws, which include the following:

Claim 1:    42 U.S.C. § 1983 unreasonable seizure/excessive force in violation of Plaintiff's Fourth and Fourteenth Amendment rights against Carrocia, Root, and Burns for (*id.* at ¶¶ 47-59);

Claim 2:    42 U.S.C. § 1983 deliberate indifference to medical need in violation of Plaintiff's rights under the Fourteenth Amendment against Carrocia and Root (*id.* at ¶¶ 60-65);

Claim 3:    42 U.S.C. § 1983 violation of the Americans with Disabilities Act against City for (*id.* at ¶¶ 66-73);

Claim 4:    42 U.S.C. § 1983 violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment against Carrocia and Root, (*id.* at ¶¶ 74-80);

Claim 5:    42 U.S.C. § 1983 ratification of violations of Plaintiff's civil rights against City and Bynum, (*id.* at ¶¶ 81-92);

Claim 6:    42 U.S.C. § 1983 deliberately indifferent policies, customs, training, and supervision against City, (*id.* at ¶¶ 93-195);

Claim 7:    42 U.S.C. § 1983 supervisory liability against Bynum, (*id.* at ¶¶ 196-203);

Claims 8-9:    42 U.S.C. § 1983 and state-law malicious prosecution against Carrocia in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments, (*id.* at ¶¶ 204-35);

Claim 10:    False light under Oklahoma common law against Carrocia, (*id.* at ¶¶ 236-46);

Claim 11:    Intentional infliction of emotional distress (IIED), under Oklahoma common law, against Carrocia, (*id.* at ¶¶ 247-52);

Claim 12:    Assault under Oklahoma common law against Carrocia, (*id.* at ¶¶ 253-57);

Claim 13:    42 U.S.C. § 1983 unreasonable search in violation of Plaintiff's Fourth and Fourteenth Amendment rights against Carrocia and Burns, (*id.* at ¶¶ 258-67);

Claim 14:  Interference with contract under Oklahoma common law against Carrocia and Root, (*id.* at ¶¶ 268-75).

Defendant Carrocia filed a partial motion to dismiss, raising several challenges to the complaint under Fed. R. Civ. P. 12(b)(6). Specifically, Carrocia asserts that Plaintiff has failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment and that the allegations in the Complaint do not support an entitlement to relief for Claims 10-12. (Doc. 19). Separately, Bynum filed a motion to dismiss each of Plaintiff's claims against him and requesting dismissal of Plaintiff's punitive damages, arguing that Plaintiff has failed to state a constitutional claim for relief against Bynum and qualified immunity. (Doc. 22). The Court addresses each motion in turn.

## II.  LEGAL STANDARDS

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (internal citations omitted). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted) (alteration original). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the plaintiff.  *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

### III. Discussion

### A.  RONNI CARROCIA

Carrocia argues that four of the claims asserted against her are ripe for dismissal. First among them, Carrocia contends that Claim 4, for violation of the Equal Protection Clause of the Fourteenth Amendment should be dismissed because the Complaint premises it "solely on the allegedly unprofessional comments Defendant Carrocia made during the . . . interaction." (Doc. 19 at 3). Carrocia cites numerous cases in which courts have found that verbal abuse, standing alone, does not implicate a constitutional right. (*Id.* at 5-6). Consequently, Carrocia maintains, an officer's use of derogatory slurs, verbal abuse, taunts, and threats—regardless of depravity— without more is not sufficient to state a viable equal protection claim. (*Id.*)

"The Equal Protection clause is triggered only when the government treats someone differently than another who is similarly situated." *S. Disposal, Inc. v. Texas Waste Mgmt., a Div. of Waste Mgmt. of Texas, Inc.*, 161 F.3d 1259, 1266 (10th Cir. 1998) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]he requirements for establishing a § 1983 claim are the same as those for establishing the underlying constitutional ... violations, ... and purposeful discrimination is an essential element of an equal protection violation." *Welsh v. City of Tulsa, Okla.*, 977 F.2d 1415, 1419–20 (10th Cir.  1992) (citing *Lewis v. City of Fort Collins*, 903 F.2d 752, 755 n. 1 (10th Cir. 1990)) (alterations original). Discriminatory intent, for purposes of a § 1983 equal protection claim, "implies that the decisionmaker . . . selected or reaffirmed a

6

particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

While courts have generally found that use of derogatory language alone is insufficient to state an equal protection claim, it is nevertheless "strong evidence" that the allegedly unconstitutional action was motivated by a discriminatory purpose. *See, e.g.*, *Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir.2003) ("We have impliedly held that racial epithets that accompany harassment or a violation of established rights may amount to a separate equal protection violation.") (citing *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999)); *Cole v. Fischer*, 379 F. App'x. 40, 43 (2d Cir. 2010) ("When the verbal harassment and simultaneous physical abuse alleged in the amended complaint are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race and religion."); *King v. City of Eastpointe*, 86 F. App'x. 790, 814 (6th Cir. 2003) ("The use of racially discriminatory language can provide some evidence of a discriminatory purpose when that language is coupled with some additional harassment or constitutional violation."); *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) ("[W]hen the racially derogatory language is coupled with conduct infringing the prisoner's right to security of his person, an inference arises that the conduct was motivated by racial bias."). Thus, in the present case, in order for Plaintiff to prevail on her § 1983 equal protection claim, she must establish that Carrocia and Root engaged in conduct that violated Plaintiff's established constitutional rights and that the Officers' actions were motivated by discrimination against people with mental disabilities.

To the extent Plaintiff contends that insults are sufficient to state a claim for a violation of her equal protection rights under the Fourteenth Amendment, Plaintiff is misguided. However, the Complaint contains sufficient factual content regarding alleged physical abuse that the Court can

plausibly infer that Plaintiff's equal protection rights were violated by Officers' use of force in conjunction with the disparaging remarks. "When the verbal harassment and simultaneous physical abuse alleged in the . . . complaint are considered together," and in granting Plaintiff the assumption of truth and drawing all reasonable inferences in her favor, the Court has "little trouble concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim" under the Equal Protection Clause of the Fourteenth Amendment. *Cole*, 379 F. App'x. at 43. Moreover, it is not lost on this Court that Carrocia's derogatory slurs and threatening remarks preceded her eventual use of force—which may have been avoided altogether but for the seemingly gratuitous escalation. Accordingly, Carrocia's motion to dismiss Plaintiff's § 1983 equal protection claim is DENIED.

Carrocia's challenges to Claims 11-12 are equally unavailing. With respect to Claim 12, Carrocia contends that Plaintiff cannot state a claim for assault because a locked door separated Plaintiff and Carrocia at the time the taser was activated, rendering it physically impossible for Plaintiff to be "placed in apprehension of an immediate harmful or offensive contact," as is required for an assault claim. (Doc. 19 at 12). As for Claim 11, Carrocia maintains that Plaintiff cannot state an IIED claim because public ridicule—such as Carrocia characterizes her conduct— does not rise to the level of extreme or outrageous conduct, as is required for an IIED claim. (*Id.* at 9). Yet, each of Carrocia's arguments is fundamentally premised on reconstituted facts. Carrocia gives the game away when she "acknowledges the limited scope of the Court's review at this stage of the suit," (Doc. 30 at 1), and then proceeds to devote an entire section of her reply brief to recast Plaintiff's "misleading" recitation of facts into a light more favorable to her own, (*id.* at 1-3). Because Plaintiff is entitled to the assumption of truth and all reasonable inferences for purposes of this motion, the Court finds that the Complaint contains sufficient allegations of fact to support Plaintiff's IIED and assault claims against Carrocia. Accordingly, with the exception of the false

light claim, which Plaintiff has conceded, Defendant Ronni Carrocia's partial motion to dismiss (Doc. 19) is DENIED.

## B.  G.T. BYNUM

As a preliminary matter, the Court acknowledges its confusion about the capacity in which Bynum is being sued.[1] This confusion is perhaps facilitated by two peculiarities of the Complaint. First, neither the caption nor the body of the Complaint specify the capacity in which Bynum is being sued.[2] Second, the § 1983 ratification claim (Claim 5) is seemingly asserted against City and Bynum individually, yet it is premised on Bynum—as the City's final policymaker—ratifying the Officers' allegedly unconstitutional conduct. (Doc. 8-1 at ¶¶ 74-92). In particular, Claim 5 alleges that "[t]he City of Tulsa through its final policymaker Defendant Bynum, did not discipline the officers, did not implement any new policies, and did not provide any new training," and thus, "the failure of  [the] City and its final policymaker to act in response . . . is sufficient" for liability against the City of Tulsa. (*Id.* at ¶ 92). To complicate matters further, Claim 6 is against the City under a § 1983 theory of municipal liability, and Claim 7 is a supervisory liability claim against Bynum individually. (*Id.* at ¶¶ 93-203). Thus, unless "ratification" of unconstitutional conduct is itself a standalone § 1983 claim that may be asserted against a municipality and its final policymaker individually, it would appear that Claim 5 is duplicative of Claim 6 against City and Claim 7 against Bynum individually.

---

[1] Bynum alluded to this confusion in his motion to dismiss, pointing to the redundancy of naming both the City and Bynum in his official capacity as defendants in the case, (Doc. 22 at 10-11)—a point that was unaddressed in Plaintiff's response.

[2] The Court does note that, while the Complaint's seventh claim for relief specifically seeks liability against Bynum individually, (Doc. 8-1 at ¶ 203), that does not resolve the confusion with Claim 5 against the City and Bynum as its final policymaker, (*id.* at ¶¶ 74-92).

In his motion to dismiss, Bynum argues that ratification of allegedly unconstitutional conduct cannot be a separate cause of action. (Doc. 22 at 4-6). Indeed, as the Tenth Circuit has observed, "basic princip[les] of linear time prevent [the Court] from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("A failure to investigate or reprimand might also cause a future violation by sending a message to officers that such behavior is tolerated. It does not, however, in and of itself constitute a causal connection in the immediate case."). Consequently, this Circuit considers post hoc ratification of unconstitutional conduct by a final policymaker not as a standalone § 1983 claim; rather, it is circumstantial evidence that a municipality followed a constitutionally deficient policy, despite maintaining a formal policy that is constitutionally compliant. (*Id.*)

Thus, in unraveling the confusion regarding Claim 5 and the capacity in which Bynum is being sued, to the extent that Plaintiff maintains Claim 5 as a separate and distinct cause of action against Bynum and City, Plaintiff is mistaken, and it must be dismissed as a standalone § 1983 claim. In light of that—and given that the Complaint separately names the City of Tulsa—the Court will assume that Bynum is sued in his individual capacity only, and the Court construes the allegations in Claim 5 as relevant to establishing the existence of a custom or policy that deviated from the City's formal policy with respect to TPD's treatment of people with mental disabilities. The Court now turns to Plaintiff's claim against Bynum in his individual capacity for supervisory liability under § 1983.

Claim 7 in the Complaint alleges that Bynum, as the Mayor of the City of Tulsa and final policymaker for TPD, adopted, enacted, ratified, and enforced policies within TPD that caused the deprivation of Plaintiff's rights by TPD. To that end, Plaintiff urges that Bynum should be held

10

liable under a § 1983 supervisory liability theory. Bynum moves for dismissal, arguing that Plaintiff has not plausibly alleged that he personally participated in a violation of Plaintiff's constitutional rights or that he enacted policies for the purpose of placing the public at risk of substantial injury. (Doc. 22 at 6-10). Bynum further argues that any constitutional right at issue related to Bynum's supervisory duties was not clearly established and he is thus entitled to qualified immunity. (*Id.* at 11-15).

As a general rule, when government officials are sued for performing discretionary functions, courts recognize the affirmative defense of qualified immunity, which protects "all but the plainly incompetent or those who knowingly violate the law," shielding them from civil liability. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also City of Tahlequah v. Bond*, 142 S. Ct. 9, 10 (2021). Once a defendant raises qualified immunity, "the plaintiff initially bears a heavy two-part burden." *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 130-31 (10th Cir. 1990)). First, the plaintiff must demonstrate that the defendant's actions violated a constitutional right. Then, the plaintiff must show that the constitutional rights the defendant allegedly violated were clearly established at the time of the conduct at issue. *Id.* If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

A right is "clearly established" under the second prong of the qualified immunity analysis when the "contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Creighton*, 483 U.S. at 640) (alterations and internal quotations marks omitted). While the inquiry "does not require a case directly on point for a right to be clearly established, existing

precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 78-79 (2017)). The Supreme Court has further elaborated that the clearly established law must be "particularized" to the facts of the case and not defined at a "high level of generality." *Pauly*, 580 U.S. at 79.

When deciding the issue of qualified immunity, courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the Court declines the invitation to pass on the thornier questions of supervisory liability because Plaintiff has failed to make a sufficient showing on the second prong of her qualified immunity analysis. Specifically, Plaintiff prefaces her analysis of the second prong by stating that the Tenth Circuit "has a long history of protecting the rights of citizens suffering from a mental health crisis from reckless conduct by police." (*Id.*) Plaintiff supports this pronouncement by citing *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997), a case where the court held that a plaintiff had plausibly alleged a constitutional violation when police rushed a car they knew to be occupied by a suicidal man. (Doc. 29 at 7) (citing 119 F.3d at 839-41). Plaintiff then cites *Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019), where the officer was denied qualified immunity after shooting a bat-wielding man with mental disability. (*Id.*) (citing 919 F.3d at 1216).

In the context of supervisory liability, the second prong of the analysis does not turn on the actions of the officers. Rather, the relevant inquiry is whether "clearly established law . . . would . . . have put a reasonable official in [Bynum's] position on notice that his *supervisory conduct* would violate Plaintiff's rights." *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018). This necessarily requires that Plaintiff "identify a case where an *offic[ial]* acting under similar circumstances . . . was held to have violated the constitution." *Id.* (quoting *Pauly*, 580 U.S. at 79)

12

(emphasis added, alteration original). Although *Allen* and *Husk* involve circumstances related to officers' treatment of disabled persons, neither case stands for the imposition of supervisory liability based on the officers' conduct. Succinctly stated, Plaintiff's reliance on cases in which qualified immunity was denied to officers is a scratch where it does not itch. Because Plaintiff has failed to identify a case in which an *official* acting under similar circumstances as Bynum was held to have violated the constitution, the Court must grant him qualified immunity.

Finally, Bynum argues that Plaintiff has not shown entitlement to punitive damages. Because the Court has granted Bynum qualified immunity, it need not reach his arguments regarding punitive damages, and it is thus denied as moot.

## IV. CONCLUSION

With the exception of Plaintiff's false light claim, which Plaintiff concedes, Defendant Ronni Carrocia's partial motion to dismiss (Doc. 19) is **DENIED**. Defendant G.T. Bynum, IV's motion to dismiss (Doc. 22) is **GRANTED** on the basis of qualified immunity. Bynum's request to dismiss punitive damages is **DENIED** as **MOOT**.

**SO ORDERED** this 13th day of February 2023.

TERENCE C. KERN
United States District Judge